UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DONNIE RAY BOUDREAUX                    CIVIL ACTION NO. 6:21-cv-00523

VERSUS                                  JUDGE JOSEPH

COMMISSIONER OF THE SOCIAL              MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, and for the reasons set forth below, it is recommended that the Commissioner's decision should be reversed and remanded for further administrative action.

## Administrative Proceedings

The claimant, Donnie Ray Boudreaux, fully exhausted his administrative remedies before filing this lawsuit. He filed applications for disability insurance benefits and supplemental security income benefits, alleging disability beginning on June 19, 2015.[1] His applications were denied.[2] He then requested a hearing. Mr. Boudreaux failed to attend the hearings scheduled for September 12, 2018[3] and April

---

[1]      Rec. Doc. 9-1 at 412, 418.

[2]      Rec. Doc. 9-1 at 188, 189.

[3]      Rec. Doc. 9-1 at 109-112.

30, 2019,[4] but he testified at hearings held on April 14, 2020[5] and July 29, 2020,[6] both of which were held before Administrative Law Judge Jennie L. McLean. The ALJ issued a decision on August 25, 2020, concluding that Mr. Boudreaux was not disabled within the meaning of the Social Security Act from the alleged disability onset date through the date of the decision.[7] Mr. Boudreaux asked the Appeals Council to review the ALJ's decision, but the Appeals Council found no basis for review.[8] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review.[9] Mr. Boudreaux now seeks judicial review of the Commissioner's decision.

## Summary of Pertinent Facts

Mr. Boudreaux was born on October 7, 1977,[10] and was 42 years old at the time of the ALJ's decision. He has a high school education[11] and work experience

---

[4]    Rec. Doc. 9-1 at 113-129.

[5]    Rec. Doc. 9-1 at 160-187.

[6]    A transcript of the hearing is found in the record at Rec. Doc. 9-1 at 130-159.

[7]    Rec. Doc. 9-1 at 75-87.

[8]    Rec. Doc. 9-1 at 7.

[9]    *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

[10]    Rec. Doc. 9-1 at 142, 171.

[11]    Rec. Doc. 9-1 at 142, 172.

as a heavy equipment operator and tractor driver.[12]  He alleged that he has been disabled since June 19, 2015, due to alcoholism and mental health conditions including bipolar disorder and schizophrenia.[13]

Mr. Boudreaux was hospitalized at Vermilion Behavioral Health Systems from June 30, 2015, through July 7, 2015.[14]  The discharge summary[15] stated that he was admitted with a diagnosis of mood disorder, recurrent, severe without psychosis, rule out bipolar depression, and alcohol dependence.  His GAF score at the time of admission was 31.[16]  Upon admission, Mr. Boudreaux reported having been arrested on July 18, 2015, for driving while intoxicated and charged with negligent homicide or negligent injury in connection with a motor vehicle accident on that date.  He had spent the previous eleven days incarcerated.  He reported that this incident increased

---

[12]      Rec. Doc. 9-1 at 143-145, 174-175.

[13]      Rec. Doc. 9-1 at 190, 199, 486.

[14]      Rec. Doc. 9-1 at 658-858.

[15]      Rec. Doc. 9-1 at 672-673.

[16]      The Global Assessment of Functioning ("GAF") scale is used to rate an individual's "overall psychological functioning."  American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") at 32 (4th ed. 1994).  A GAF score between 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  The GAF scale was omitted from DSM–5 because of its "conceptual lack of clarity. . . and questionable psychometrics in routine practice."  American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM–5") 16 (5th ed. 2013).  Although still used by many mental health professionals, GAF scores are not determinative of a claimant's ability to work.  *Fogle v. Commissioner of Social Security Administration*, No. 4:12-CV-325, 2014 WL 106524, at *3 (E.D. Tex. Jan. 10, 2014); *Andrews v. Astrue*, 917 F.Supp.2d 624, 638 (N.D. Tex. 2013).

his depression and suicidal ideation.  He reported having taken Prozac for twelve years for bipolar disorder.  He also reported heavy drinking for the previous four to five years.  During his hospitalization, Mr. Boudreaux was prescribed Tranxene, Thiamin, and Prozac.  His discharge medications were Prozac and Remeron.  His condition improved during his hospitalization, and at the time of discharge, his mood was euthymic, his thought process was goal directed, his thought content was within normal limits, there was no evidence of psychosis, his condition was stable, his prognosis was "fair with compliance," and his GAF score was 63.[17]  He was discharged to Acadiana Addiction Center, Substance Abuse Center.

Mr. Boudreaux was a residential patient at Acadiana Addiction Center from July 7, 2015, through September 20, 2015.[18]  When evaluated upon admission, he was well-groomed and fully oriented, his affect was appropriate, his mood was anxious, his attitude was sincere and cooperative, his speech was pressured, his thought process was intact but tangential, his eye contact was normal, and there was no evidence of delusion or psychosis.  His memory, cognitive functioning, and abstract thinking were intact.  His judgment was impaired, and his insight was limited.  He was admitted under the care of Dr. Kevin Young.  Dr. Young's

---

[17]    A GAF score between 61 and 70 indicates "mild symptoms. . . or some difficulty in social, occupational, or school functioning. . . but generally functioning pretty well. . . ."  DSM–IV at 32.

[18]    Rec. Doc. 9-1 at 859-988.

assessment was that Mr. Boudreaux had alcohol dependence, bipolar depression, and insomnia. He was to complete one month of residential treatment. Mr. Boudreaux was discharged on September 20, 2015, after completing seventy-five days of residential treatment. He was to begin attending AA/NA meetings, increase his support system, and continue taking Prozac and Remeron.

Approximately one year later, on August 4, 2016, Mr. Boudreaux described himself to psychiatric nurse practitioner Valecia Vaughn as an unsuccessful recovering alcoholic. He reported trouble falling asleep and remaining asleep, hearing voices, and experiencing anxiety. He reported having last drunk alcohol a few days earlier and stated that he drank daily until blacking out. The assessment was Bipolar I disorder, most recent episode, depressed – severe with psychotic features; overanxious disorder; and organic insomnia due to mental disorder. A psychiatric diagnostic evaluation was planned, and medications were prescribed, including Prozac, Buspirone, Vistaril, and Risperdal.

Mr. Boudreaux was hospitalized at Longleaf Hospital on August 25, 2016.[19] According to the psychiatric evaluation conducted upon admission, he had presented at Opelousas General Hospital's emergency room for worsening depression and suicidal ideation and was referred on a physician's emergency certificate. He gave

---

[19]     Rec. Doc. 9-1 at 595-611.

a history of sexual abuse as a child and hospitalizations for mental health treatment in 2005, 2006, and twice in 2007.  He reported drug abuse in the 1990s.  He reported drinking a fifth of whiskey and ten to twelve beers every night.  On the same day, he both denied suicidal ideation and admitted having suicidal ideation and a plan to carry it out.  He admitted auditory hallucinations.  The diagnoses assigned were Bipolar I, most recent depression with psychosis; alcohol dependence; and anxiety disorder.  The plan was for Mr. Boudreaux to receive twenty-eight days of in-patient treatment, but the record does not show when he was released from this facility.

Mr. Boudreaux was then hospitalized at New Day Recovery in West Monroe, Louisiana, from September 7, 2016, to October 1, 2016[20] for alcohol detoxification. In a psychiatric evaluation on September 21, 2016, his chief complaints were depression, anger, and anxiety.  He reported multiple prior in-patient admissions for psychiatric issues but no suicide attempts.  He had previously detoxed in July 2015. Mr. Boudreaux was discharged on October 1, 2016, having completed the program. The discharge diagnoses were alcohol use disorder, severe; major depressive disorder, recurrent episode, moderate; Bipolar I disorder, current or most recent episode depressed, with psychotic features; and post-traumatic stress disorder.  He

---

[20]    Rec. Doc. 9-1 at 614-630.

was to take Naltrexone Hydrochloride, Prozac, Trazodone, Trileptal, and Zyprexa and follow up at Core Gambling Treatment Center in Shreveport, Louisiana.

On November 1, 2016, Mr. Boudreaux again saw nurse Vaughn.[21]  He reported that he had gone from Longleaf to Core and after being released was staying at Lighthouse Mission.  The assessments were Bipolar I disorder, most recent episode, depressed – severe with psychotic features, overanxious disorder, organic insomnia due to mental disorder, and alcohol dependence in remission.

On November 25, 2016, Mr. Boudreaux completed a function report,[22] in which he stated that he was living at a mission with other homeless men.  He reported that he had problems with focus, concentration, short-term memory, depression, mania, anger, and drinking.  He stated that he lost his driver's license due to a DWI, was not good at managing money or remembering to pay bills, and had trouble controlling his temper.  He stated that he had trouble reading because his mind wandered.  He described isolating behavior and admitted hearing voices.  He stated that he lost several jobs because he could not get along with his supervisors.  He also stated that he helped a crippled man at the mission, went to church daily, and visited with his children and grandchildren weekly.  He was taking Prozac, Risperdal, Trazadone, and Hydroxyzine Pamoate.

---

[21]     Rec. Doc. 9-1 at 635-637.

[22]     Rec. Doc. 9-1 at 500-507.

On February 20, 2017, Mr. Boudreaux was examined by clinical psychologist Alfred E. Buxton at the request of Disability Determination Services.[23]    Mr. Boudreaux reported that he had been living in a men's shelter for the past four months and had been homeless for about a year before that.  He reported four arrests in the past fifteen years and mental health treatment starting in 2005, with monthly treatment for the past four months.  He was taking Vistaril, Prozac, Trazodone, Buspar, and Naltrexone with good results, but he had only been on that combination of medications for one month.  Dr. Buxton found that Mr. Boudreaux's short-term and long-term memory were intact, his ability to attend and concentrate was good, his pace was even, and his intellect was normal.  His judgment, reasoning, and reflective cognition were good.  His insight was fair.  His mood was spontaneous and animated.  Mr. Boudreaux reported chronic auditory hallucinations, denied suicidal ideation over the past six months, and admitted occasional reactive assaultive ideation as well as easily becoming upset.  He described occasional dysphoria and crying spells, stated that he previously was very depressed but had been happier during the past month.

Dr. Buxton diagnosed Mr. Boudreaux with Major Depressive Disorder, Recurrent, with Psychotic Features with a moderate degree of impairment and a fair

---

[23]    Rec. Doc. 9-1 at 649-652.

prognosis.  Dr. Buxton also diagnosed Mr. Boudreaux with alcohol dependence but noted that Mr. Boudreaux claimed he had been sober for six months.  Dr. Buxton stated that Mr. Boudreaux was bright enough to understand simple and some more complex instructions.  He also stated that it was "probably too early in his treatment protocol. . . to determine whether or not he would prove to be reliable and dependable as an employee over a protracted period of time.  Should he continue to benefit from his mental health intervention for a duration of not less than 6-9 months and continue to abstain from the use of alcohol, then the prospects of him performing in a reliable and dependable fashion as an employee would greatly improve." Similarly, Dr. Buxton opined that if Mr. Boudreaux continued to receive and benefit from mental health intervention services, then he would be able to get along with coworkers and supervisors and tolerate the stress and frustration of working.

Mr. Boudreaux resided at The Refinery Mission in Opelousas, Louisiana from December 6, 2017, to February 14, 2018.[24]  However, because of increasingly violent and aggressive behavior indicative of a "very steep decline in his mental health," Mr. Boudreaux was banned from the mission's property.

On November 7, 2018, Mr. Boudreaux was admitted to Compass Health[25] on a physician's emergency certificate following an emergency room visit; he was

---

[24]     Rec. Doc. 9-1 at 14.

[25]     Rec. Doc. 9-1 at 1002-1030.

discharged a week later.  Upon admission, Mr. Boudreaux was restless, confused, and paranoid with racing thoughts, poor impulse control, and an inability to concentrate during assessment.  He was diagnosed with psychosis and paranoia with a history of bipolar and schizophrenia disorders as well as alcoholism.  On November 10, his behavior was described as bizarre, dramatic, and illogical.  It was noted that he was selectively compliant with medications.  The next day, he was described as bizarre, illogical, preoccupied, anxious, restless, and irritable.  He exhibited a flight of ideas and rapid pressured speech.  On November 12, he suddenly began yelling and cursing then barricaded himself in his room.  On November 13, he was quiet, calm, and cooperative but still bizarre at times and selectively compliant with medication.  That evening, he urinated on the floor and wall in the dayroom, was observed eating sheetrock from a hole he made in the wall of his room, and then had a physical altercation with one of the staff members.  The sheriff's office was called, and Mr. Boudreaux was arrested.  The discharge summary indicated, however, that Mr. Boudreaux showed improvement during his hospitalization and was discharged on November 18, 2018.[26]  The discharge diagnosis was schizoaffective disorder, bipolar type.  It was also noted that Mr.

---

[26]    Rec. Doc. 9-1 at 1031.

Boudreaux was homeless.  He was to continue taking lithium carbonate, Prozac, and melatonin following discharge.

On October 9, 2019, Mr. Boudreaux began treating at Opelousas Behavioral Health Clinic upon a referral from the St. Landry Parish probation/parole authorities,[27] and he continued to treat at the clinic through December 2019.[28]  He reported that he had been off his medication and sober for the prior ten months while incarcerated in Terrebonne Parish, Louisiana on a second-degree battery charge following his assault on a staff member at the hospital where he was formerly a patient.  On October 31, 2019, Dr. Kevin Young diagnosed him with alcohol abuse dependence (in remission) and bipolar disorder, current episode depressed, moderate, and prescribed Trileptal and Prozac.[29]  On December 5, 2019, Dr. Young added anxiety disorder, unspecified, to Mr. Boudreaux's diagnoses and added hydroxyzine hydrochloride to his medications.[30]  On that same date, Dr. Young opined that Mr. Boudreaux was "unable to work due to mental health issues."[31]

---

[27]    Rec. Doc. 9-1 at 1044-1054.

[28]    Rec. Doc. 9-1 at 1055-1089.

[29]    Rec. Doc. 9-1 at 1068.

[30]    Rec. Doc. 9-1 at 1086-1087.

[31]    Rec. Doc. 9-1 at 1042.

Mr. Boudreaux testified at hearings on April 14, 2020, and July 29, 2020. During the first hearing, Mr. Boudreaux testified that he had "a big problem" with following instructions, getting along with people, and taking criticism while at work. He explained that he drank to cope with this problem. He also testified that he had trouble being in social situations with other people and tended to isolate to avoid others. He reported that he was hospitalized for mental health treatment approximately ten to twelve times in his life, and maybe three or four times since June 2015. He explained that he went from Compass to jail for nine months following an altercation with a hospital staff member. After being released from jail, he reportedly lived with someone he met at AA and socialized some but primarily stayed in his room.

At the second hearing, Mr. Boudreaux testified that he had been fired from quite a few jobs because he could not handle the pressure. He complained about short-term memory problems, an inability to focus, and an inability to get along with others on the job. He stated that he was treating with Dr. Kevin Young at Opelousas Behavioral Health and that the medications he was prescribed were helping.

Mr. Boudreaux now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[32] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[34]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[35] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[36] Conflicts in

---

[32]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[33]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[34]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[35]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[36]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

the evidence[37] and credibility assessments[38] are for the Commissioner to resolve, not the courts.  Four elements of proof are weighed by the court in determining whether substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[39]

## B.    <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence,[40] while the Supplemental Security Income ("SSI") program provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled.[41]  A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[37]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[38]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[39]    *Wren v. Sullivan*, 925 F.2d at 126.

[40]    See 42 U.S.C. § 423(a).  See, also, *Smith v. Berryhill*, 139 S.Ct. 1765, 1772 (2019).

[41]    42 U.S.C. § 1382(a)(1) & (2).  See, also, *Smith v. Berryhill*, 139 S.Ct. at 1772.

continuous period of not less than twelve months."[42]  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[43]

## C.    **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled, which considers whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment enumerated in the relevant regulations; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[44]

Before going from step three to step four, the claimant's residual functional capacity[45] is evaluated, by determining the most the claimant can still do despite his

---

[42]    42 U.S.C. § 1382c(a)(3)(A).

[43]    42 U.S.C. § 1382c(a)(3)(B).

[44]    20 C.F.R. § 404.1520; *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

[45]    20 C.F.R. § 404.1520(a)(4).

physical and mental limitations based on all relevant evidence in the record.[46]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[47]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[48]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[49]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[50]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[51]

---

[46]    20 C.F.R. § 404.1545(a)(1).

[47]    20 C.F.R. § 404.1520(e).

[48]    *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[49]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[50]    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[51]    20 C.F.R. § 404.1520(a)(4); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

D.    **The ALJ's Findings and Conclusions**

In this case, the ALJ determined, at step one, that Mr. Boudreaux has not engaged in substantial gainful activity since June 19, 2015. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Mr. Boudreaux has the following severe impairment:  major depressive disorder recurrent with psychotic features. This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Mr. Boudreaux has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Mr. Boudreaux challenged this finding.

The ALJ found that Mr. Boudreaux has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  he is able to learn, understand, remember, and perform simple tasks with routine supervision; no public contact and no customer service work; able to interact appropriately with supervisors and coworkers for superficial work purposes; and able to adapt to work situations with forewarning of changes. Mr. Boudreaux did not expressly challenge this finding.

At step four, the ALJ found that Mr. Boudreaux is not capable of performing his past relevant work as a heavy equipment operator and a tractor operator. Mr. Boudreaux did not challenge this finding.

At step five, the ALJ found that Mr. Boudreaux was not disabled from June 19, 2015 (the alleged disability onset date) through August 25, 2020 (the date of the decision) because there are jobs in the national economy that he can perform. Mr. Boudreaux challenged this finding.

**E.    The Allegations of Error**

Mr. Boudreaux contends that the ALJ erred (1) in failing to find that he meets the requirements for disability under Listing Nos. 12.03, 12.04, 12.06, 12.08, and 12.15; (2) in failing to find that he was disabled for a time and is entitled to a closed period of disability benefits ; (3) in finding that he was not completely credible; and (4) in failing to give proper weight to the opinions of his treating physicians. Mr. Boudreaux also contends that the Appeals Council erred in finding that substantial evidence supports the ALJ's decision.

**F.    Did the ALJ Err in Failing to Find that Mr. Boudreaux Meets a Listing?**

A claimant may satisfy his burden of proving disability if he shows that his impairment or impairments meet or equal a listed impairment.[52] Mr. Boudreaux argued that the ALJ erred at Step Three of the sequential analysis by failing to find that he meets Listing Nos. 12.03, 12.04, 12.06, 12.08, and 12.15. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical

---

[52]    20 C.F.R. § 404.1520(a)(4)(iii), (d).

criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[53]

Listing 12.03 pertains to schizophrenia spectrum and other psychotic disorders.  Mr. Boudreaux alleged that he was disabled due to mental conditions, expressly including schizophrenia.  There is evidence in the record that Mr. Boudreaux experienced psychotic symptoms including chronic auditory hallucinations.  Dr. Buxton found that Mr. Boudreaux had a major depressive disorder, recurrent, with psychotic features, and Mr. Boudreaux was diagnosed with schizoaffective disorder, bipolar type, when he was discharged from Compass on November 18, 2018, while he remained insured.  Although the ALJ found that Mr. Boudreaux had a major depressive disorder with psychotic features, she did not evaluate whether Mr. Boudreaux met Listing 12.03.  This was a significant error that requires remand of this matter.

Listing 12.04 pertains to depressive, bipolar and related disorders.  The criteria for this listing are divided into the alternative Paragraph B criteria and Paragraph C criteria.  A claimant who satisfies either set of criteria is disabled.  To be disabled under Paragraph B, a claimant must have an extreme limitation in at least one broad area of functioning or a marked impairment in at least two areas.

---

[53]    *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  See, also, *Russo v. Saul*, 805 Fed. App'x 269, 273 (5th Cir. 2020).

In this case, the ALJ found that Mr. Boudreaux had moderate impairments in all four functional areas. According to her ruling, this conclusion is based solely on information provided by Mr. Boudreaux in his function report. Later in the ruling, however, the ALJ found that "the statements in the record from the claimant" were entitled to "little weight, as they are not supported by other objective evidence in the record." Thus, the ALJ's reasoning is internally inconsistent. More important, the ALJ failed to show that any medical evidence in the record supported her evaluation of the nature of Mr. Boudreaux's functional impairment in the areas listed in Paragraph B.

The ALJ found that Mr. Boudreaux had moderate impairment in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. However, the record is clear that Mr. Boudreaux was hospitalized five times in three and a half years for mental health treatment or alcohol rehabilitation. Just before one of the hospitalizations, he had an automobile accident while drinking and driving. During another hospitalization, he assaulted a staff member and was consequently incarcerated for ten months. This evidence should have been considered by the ALJ in evaluating the functional areas of interacting with others and adapting or managing oneself. Because there is no indication in the ruling that the ALJ considered anything other than Mr. Boudreaux's function report in reaching

a finding with regard to whether he met the Paragraph B criteria for Listing 12.04, this Court finds that the ALJ's conclusion was not supported by substantial evidence in the record.

Regarding the Paragraph C criteria, the ALJ stated, without any explanation whatsoever, that "the evidence fails to establish the presence of the 'paragraph C' criteria."[54]    While procedural perfection in administrative proceedings is not required,[55] the ALJ had a duty to explain the basis for her conclusion that Mr. Boudreaux does not meet the Paragraph C criteria.  "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible."[56]  Therefore, an "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[57]  More particularly, "[t]he ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms

---

[54]    Rec. Doc. 9-1 at 80.

[55]    *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

[56]    *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010), report and recommendation adopted, 2010 WL 2473598 (N.D. Tex. June 16, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

[57]    *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010) (citing *Audler v. Astrue*, 501 F.3d at 448), which in turn cites 42 U.S.C. § 405(b)(1).

are insufficiently severe to meet any listed impairment."[58]  In this case, the ALJ did not do so.  She provided no basis whatsoever for her conclusion that Mr. Boudreaux's mental health disorder does not satisfy the Paragraph C criteria.  The ALJ's failure to compare Mr. Boudreaux's symptoms with the criteria of this relevant listing resulted in a failure to apply the proper legal standard as well as a failure to support her finding with substantial evidence.  This error mandates remand of the ALJ's decision.

Without weighing the evidence in any way, this Court notes that there is evidence in the record showing that Mr. Boudreaux had mental health treatment for more than two years as well as frequent hospitalizations that might be interpreted as evidence of marginal adjustment.[59]  Thus, there is relevant evidence in the record that should have been considered by the ALJ in reaching her conclusion regarding whether Mr. Boudreaux's impairments satisfy the Paragraph C criteria.  The ALJ's decision should be remanded so that this evidence can be properly considered.

Listing 12.06 pertains to anxiety and obsessive-compulsive disorders.  Mr. Boudreaux was diagnosed with an anxiety disorder in August 2016.  The ALJ gave no reason for failing evaluate Mr. Boudreaux under this listing.  This was error.  Listing 12.06 requires analysis of a claimant's limitations in the same four areas of

---

[58]    *Savoie v. Colvin*, No. 14-30-JJB-RLB, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015).

[59]    20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.00(G)(2)(c).

functionality addressed in Listing 12.04.  As noted, there is evidence in the record relevant to those criteria that should have been considered by the ALJ.

Listing 12.08 pertains to personality and impulse-control disorders.  There is no evidence in the record that Mr. Boudreaux's mental health impairment is this type of disorder.  Therefore, the ALJ did not err in failing to evaluate whether Mr. Boudreaux meets this listing.

Listing 12.15 pertains to trauma-related and stressor-related disorders.  There is no evidence in the record establishing that Mr. Boudreaux has this type of disorder. Therefore, the ALJ did not err in failing to evaluate whether Mr. Boudreaux meets this listing.

In sum, the ALJ erred in failing to evaluate whether Mr. Boudreaux's impairments satisfy the criteria of Listings 12.03, 12.04, and 12.06.  "A claimant's substantial rights are affected at Step 3 when he demonstrates that he meets, or at least appears to meet, the requirements for a Listing."[60]  As noted above, there is evidence in the record relevant to Listing 12.03 and both paragraphs of Listings 12.04 and 12.06.  Therefore, the ALJ's errors affected Mr. Boudreaux's substantial rights.  Accordingly, this matter should be remanded for reconsideration of whether Mr. Boudreaux's impairments meet a listing.

---

[60]    *Forest v. Astrue*, No. 11-2017, 2012 WL 3137844, at *10 (E.D. La. Aug. 1, 2012), report and recommendation adopted, 2012 WL 3437514 (E.D. La. Aug. 15, 2012).

**G.**   **Did the ALJ Err in Failing to Award a Closed Period of Disability?**

Mr. Boudreaux argued that the ALJ should have found him disabled for a closed period of time.   In a closed period case, the ALJ determines that a new applicant for disability benefits was disabled for a finite period of time that started and stopped before the decision was rendered.[61]   Benefits may be awarded for a closed period of disability when a claimant experiences medical improvement in a previously disabling condition and becomes able to engage in substantial gainful activity.[62]   Thus, the ALJ must determine that the claimant became disabled and then must employ the decision-making process used in termination cases to decide that the claimant's disability had ended and when that occurred.[63]

In this case, however, Mr. Boudreaux never explained when he thought a closed period of disability would have terminated.   Accordingly, Mr. Boudreaux did not prove that he was entitled to recover benefits during a closed period of disability, and the ALJ did not err in failing to consider a closed period.

---

[61]   *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (citing *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987)).

[62]   *Teague v. Astrue*, 342 F. App'x 962, 963-64 (5th Cir. 2009).

[63]   *Waters v. Barnhart*, 276 F.3d at 719.

**H.**    **Did the ALJ Err in Evaluating Mr. Boudreaux's Credibility?**

Mr. Boudreaux argued that the ALJ erred in finding that his testimony and complaints were not fully credible.  The ALJ found that Mr. Boudreaux's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[64]  An ALJ's assessment of a claimant's credibility is generally accorded great deference.[65]  In fact, the ALJ, as the administrative fact finder, is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.[66]  The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."[67]

In support of this argument, Mr. Boudreaux pointed out that the ALJ gave little weight to the claimant's statements because "they are not supported by other

---

[64]    Rec. Doc. 9-1 at 82.

[65]    *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

[66]    *Scott v. Heckler*, 770 F.2d at 485.

[67]    *Villa v. Sullivan*, 895 F.2d at 1024.

objective evidence in the record."[68]  The absence of objective factors can justify the conclusion that a witness lacks credibility.[69]  But in this case the ALJ discounted everything that Mr. Boudreaux said in his hearing testimony and in his function report and failed to recognize that Mr. Boudreaux's function report and hearing testimony are consistent with the treatment notes contained in the record.  For example, Mr. Boudreaux complained that his ability to work is hampered by his mental impairment that is manifested in his having difficulty controlling his temper and getting along with coworkers and supervisors, and his assault on a staff member at the hospital where he was being treated supports his complaint.  Additionally, the record contains several examples of decompensation by Mr. Boudreaux, characterized by bizarre behavior that resulted in his being committed to mental health institutions or incarcerated.

Accordingly, this Court finds that the ALJ's evaluation of Mr. Boudreaux's credibility is not supported by substantial evidence in the record, requiring that this matter be remanded.

---

[68]     Rec. Doc. 9-1 at 84.

[69]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008) (citing *Hollis v. Bowen*, 837 F.2d at 1385).

## I.     <u>Did the ALJ Err in Weighing the Medical Opinions</u>?

Mr. Boudreaux argued that the ALJ failed to properly weigh the medical opinions, particularly that of Dr. Kevin Young.  Dr. Young was Mr. Boudreaux's treating physician at Acadiana Addiction Center in 2015 and again was his treating physician at Opelousas Behavioral Health Clinic in 2019.  On December 5, 2019, Dr. Young opined that Mr. Boudreaux was unable to work due to his mental health condition.  The ALJ gave no weight to Dr. Young's opinion, stating that "it was not accompanied by medical records or testing."[70]   In fact, however, Dr. Young evaluated Mr. Boudreaux's mental health status on October 31 2019[71] and again on December 5, 2019.[72]   Therefore, the ALJ's reason for giving no weight to Dr. Young's opinion is not supported by substantial evidence in the record.

The ALJ gave great weight to the opinions of the examining consultant, Dr. Buxton.  In Dr. Buxton's opinion, Mr. Boudreaux was capable of managing his own personal affairs and was bright enough to understand simple and some complex instructions.  But the remainder of Dr. Buxton's opinions are essentially meaningless because they are couched in conditional terms.  He stated that it was "probably too early in his treatment protocol. . . to determine whether or not he would prove to be

---

[70]     Rec. Doc. 9-1 at 84.

[71]     Rec. Doc. 9-1 at 1061-1069.

[72]     Rec. Doc. 9-1 at 1080-1087.

reliable and dependable as an employee. . . ." He stated that "should" Mr. Boudreaux continue to benefit from mental health treatment for six to nine months and also continue to abstain from alcohol, "the prospects of him performing in a reliable and dependable fashion as an employee would greatly improve." He further stated that "as long as he continues to benefit from mental health intervention services and substance abuse intervention services then the prospects of him being able to tolerate the stress and frustration he would encounter in the job setting would improve." He then stated that, if those same conditions were satisfied, then Mr. Boudreaux's "ability to establish and maintain mutual working relationships with coworkers and supervisors alike would also be expected to improve." Thus, beyond commenting on Mr. Boudreaux's innate intellectual ability, Dr. Buxton did not actually opine on Mr. Boudreaux's functionality. Instead, his opinions all hinged on unrealized conditions and, consequently, are speculative at best. Accordingly, the ALJ's reliance of Dr. Buxton's opinions was not supported by substantial evidence in the record.

**J.    Did the Appeals Council Err in Finding that Substantial Evidence Supports the ALJ's Decision?**

Mr. Boudreaux's final assignment of error is that the Appeals Council erred in finding that there was substantial evidence in the record to support the ALJ's decision. But Mr. Boudreaux offered no argument or evidence in support of this contention. Therefore, it lacks merit.

## <u>Conclusion and Recommendation</u>

For the reasons fully discussed above, this Court recommends that the Commissioner's decision should be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to evaluate whether Mr. Boudreaux meets the criteria of Listings 12.03 and 12.04, reevaluate Mr. Boudreaux's credibility, and properly weigh the medical opinions. Because the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[73]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

---

[73] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[74]

Signed at Lafayette, Louisiana, this 24th day of February 2022.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[74] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).